# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SCOTT OKUN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 06 C 5799 |
| v. ) | |
| ) | Judge George M. Marovich |
| ) | |
| ILLINOIS STATE TOLL HIGHWAY ) | |
| AUTHORITY, JOELLE McGINNIS, ) | |
| BRIAN McPARTLIN, TRACY M. SMITH, ) | |
| and ANTHONY M. MARTIN, SR., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Scott Okun ("Okun") filed a two-count complaint against defendants. In Count I, Okun asserts that defendants Illinois State Toll Highway Authority ("ISTHA"), Joelle McGinnis ("McGinnis"), Brian McPartlin ("McPartlin"), Tracy Smith ("Smith") and Anthony M. Martin, Sr. ("Martin") deprived Okun of due process of law in violation of 42 U.S.C. § 1983. In Count II, Okun asserts that McGinnis defamed him. Defendants move to dismiss Okun's complaint. For the reasons outlined below, the Court grants in part and denies in part defendants' motion.

## I.   Background

The Court takes as true the allegations in plaintiff's complaint.

Defendant Illinois State Toll Highway Authority ("ISTHA") is an agency of the State of Illinois. ISTHA is responsible for running the toll highways in Illinois. It employs defendants McPartlin, the Chief of Administration; Smith, the Inspector General; and Martin, the Deputy

Inspector General. It also employs defendant McGinnis, though her title is not clear from the complaint. Plaintiff Okun also worked for ISTHA from March 2003 to about February 2006, when Okun was suspended without pay for several months and ultimately forced to resign.

On February 2, 2006, ISTHA suspended Okun without pay. Smith recommended the suspension, Martin concurred, and McPartlin informed Okun of the suspension. The reason for Okun's suspension was that he allegedly violated the state's procurement code in connection with a contract extension to a company called IGOR and a $50,000 sub-contract awarded to Carquiville Printing ("Carquiville"), where Okun's cousin worked.

ISTHA's first contract with ISTHA was awarded in 2003. When Okun first started working for ISTHA, he was the Program Manager for Marketing. Among other things, he was asked to obtain quotes for the printing of an I-PASS poster to be installed in toll booths. One of the three quotes Okun obtained was from Carquiville Printing, where his cousin worked. Okun informed the purchasing department and his supervisor that his cousin worked at Carquiville Printing. His supervisor and a person from the purchasing department approved the process, and Carquiville was awarded the job. It is unclear from the complaint who decided to choose Carquiville as the printer for the poster.

Soon thereafter, Okun was assigned to work on a program to make I-PASS available at Jewel stores. The ISTHA Board awarded IGOR a contract to package and distribute to Jewel stores certain I-PASS-related products and materials.

Years later, ISTHA was considering whether to extend IGOR's contract. At about the same time, ISTHA realized it needed to contact all I-PASS users regarding program changes. Someone (it is not clear from the complaint who) concluded that the cheapest way to reach the I-

PASS users would be to send them postcards. Because ISTHA was dealing with IGOR's contract at the same time, someone (again, the complaint leaves unclear who) decided that it might make sense to outsource the postcard printing through IGOR. Okun obtained a quote from Carquiville for the postcards, and that bid was least expensive by about $14,000. Ultimately, Karen Burke ("Burke"), the Chief of Operations, approved the decision to have IGOR and Carquiville work together on the postcards. It is unclear from the complaint who recommended that decision to Burke.

As mentioned above, ISTHA suspended Okun without pay in February 2006 for his role in the Carquiville postcard subcontract. After the suspension, ISTHA spoke to the media about Okun's suspension. Specifically, McGinnis told reporters from the Chicago Tribune, among other media outlets, that Okun was suspended for "circumventing" procurement procedures. Okun alleges that the implication of McGinnis's statements was that he "engineered the illegal award of a printing contract to a company that employed his cousin."

A few months after his February 2006 suspension, Okun was forced to resign.

## II. Standard on a motion to dismiss

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003). On a motion to dismiss, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."

*Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). The Seventh Circuit has explained:

> Plaintiffs need not plead facts; they need not plead law; they plead claims for relief. Usually they need do no more than narrate a grievance simply and directly, so that the defendant knows what he has been accused of. . . . Any district judge (for that matter, any defendant) tempted to write "this complaint is deficient because it does not contain . . ." should stop and think: What rule of law *requires* a complaint to contain that allegation.

*Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005).

### III. <u>Discussion</u>

#### A. Okun's § 1983 claim

In Count I, Okun asserts a claim against defendants under 42 U.S.C. § 1983. He asserts that defendants violated the Fourteenth Amendment to the United States Constitution by depriving him of a liberty or property interest without due process of law.

Defendants correctly point out that Okun cannot state a claim for deprivation of a property right because he had no property interest in his employment with ISTHA. Employees do not have a property interest in at-will employment. *Harris v. City of Auburn*, 27 F.3d 1284, 1286 (7th Cir. 1994) ("Our cases make clear that an at-will employee does not have a constitutionally protected property right in his continued employment."). The Illinois Administrative Code explicitly states that Tollway Authority employees are employed at-will. *See* 92 Ill. Admin. Code § 2520.800 ("Except for those employees covered by a collective bargaining agreement that provides otherwise, [Toll Highway] Authority employees are 'at will' employees."). Thus, Okun cannot state a claim for a deprivation of a *property* right.

Okun, however, argues that he has stated a claim for deprivation of a liberty interest without due process of law. To prove a deprivation of a liberty interest, a plaintiff must show:

"1) he was stigmatized by the defendants' conduct; 2) the stigmatizing information was publicly disclosed, and 3) he suffered tangible loss of other employment opportunities as a result of public disclosure." *Harris v. City of Auburn*, 27 F.2d 1284, 1286 (7th Cir. 1994). Charges that are sufficiently stigmatizing include immorality, dishonesty, alcoholism, disloyalty and subversive acts. *Mitchell v. Glover*, 996 F.2d 164, 167 (7th Cir. 1993). Other labels, such as incompetence or failure with respect to particular skills, are not sufficiently stigmatizing to implicate a liberty interest. *Mitchell*, 996 F.2d at 167.

Here, Okun has properly alleged a violation of a liberty interest. Okun alleged that the statements McGinnis made about his suspension implied that he was terminated for illegally awarding a contract to his cousin. The facts may not ultimately bear this out, but Okun's allegations suffice to state a claim.

Finally, individual defendants McPartlin, Smith and Martin assert that Okun has failed to allege § 1983 claims against them because he has failed to allege their involvement with the alleged constitutional deprivation. Liability under § 1983 "does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (quoting *Sheik-Abdi v. McClellon*, 37 F.3d 1240, 1248 (7th Cir. 1994)). In order to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must include in his complaint allegations that the individual is involved in the constitutional deprivation. *See Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987); *Brown v. Illinois Dep't of Public Aid*, 318 F. Supp.2d 696, 700 (N.D. Ill. 2004) (dismissing § 1983 claim where plaintiff's "allegations of unequal treatment are made generally against all defendants, failing to allege the 'element of personal involvement necessary to individual

liability under § 1983.'") (internal citation omitted). Okun has not included any allegations that McPartlin, Smith or Martin participated in the alleged deprivation of liberty. Accordingly, Count I is dismissed without prejudice with respect to those three individuals.

### B. Absolute immunity

Okun brings Count II–his claim for defamation–against only McGinnis. She moves to dismiss the claim on the grounds that she is absolutely immune from suit.

The absolute immunity McGinnis asserts is an affirmative defense. *See Blair v. Walker*, 64 Ill.2d 1, 5-6 (Ill. Sup. Ct. 1976). Affirmative defenses are generally not issues on which it is appropriate to dismiss a claim pursuant to Fed.R.Civ.P. 12(b)(6), because a plaintiff need not plead around an affirmative defense. *United States Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003); *see also Alvarado v. Litscher*, 267 F.3d 648, 651-652 (7th Cir. 2001) ('[T]he plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity.' … 'Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground for dismissal …') (citing *Jacobs v. City of Chi.*, 215 F.2d 758 (7th Cir. 2000)). Still, a plaintiff "may plead himself out of court by alleging (and thus admitting) the ingredients of a defense." *United States Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003). Thus, the Court next considers the ingredients of the defense and whether plaintiff has admitted them.

Under Illinois law, an executive government official is "protected from actions for civil defamation by an absolute privilege when issuing statements which are legitimately related to matters committed to his responsibility." *Blair v. Walker*, 64 Ill.2d 1, 10 (Ill. Sup. Ct. 1976) (recognizing the privilege for the Governor). The Illinois Supreme Court explained that:

>absolute immunity represents a severe restriction on the right of the individual to be secure in his reputation. This restriction is justified by the countervailing policy that officials of government should be free to exercise their duties without fear of potential civil liability.

*Blair*, 64 Ill.2d at 6. Illinois courts have applied the privilege to other government officials, such as police superintendents and detectives, who are speaking about issues within the scope of their duties. *See Dolatowski v. Life Printing and Publishing Co., Inc.,* 197 Ill.App.3d 23, 29 (1st Dist. 1990); *Harris v. News-Sun*, 269 Ill.App.3d 648, 653 (2nd Dist. 1995). In *Harris*, the Illinois Appellate Court also applied the privilege to someone whose duties including acting as a government spokesperson. *Harris*, 269 Ill.App.3d at 653 ("as an official police spokesperson communicating with the press regarding an investigation, [defendant] was an official cloaked with immunity for statements made within the scope of his official duties.").

Here, plaintiff has alleged McGinnis, an ISTHA employee, made defamatory statements to the press about Okun. Specifically, plaintiff alleges:

> On February 8, 2006, McGinnis, *the ISTHA's designated spokesperson*, advised John Chase and Jon Hildevitch, reporters for the Chicago Tribune, that 'tollway officials discovered that Okun had circumvented regular contracting procedures in awarding the contract.' McGinnis further added, 'Any printing contract is supposed to be routed through the state's office of Central Management Services [CMS]. Scott did not go through CMS. He did his own version of getting quotes from three companies, which is not the appropriate way to hire a printing firm.'

(Complaint ¶ 31) (emphasis added). Plaintiff alleges that the statements McGinnis made were false. By alleging that McGinnis was ISTHA's "designated spokesperson" when she made the allegedly defamatory statement, plaintiff has plead himself out of court. The Court cannot conceive of any set of facts plaintiff could prove that would be consistent with both (1) his allegation that McGinnis was "ISTHA's designated spokesperson" and (2) a conclusion that speaking with the press about the incident was not within the scope of her duties. Plaintiff has

plead facts entitling McGinnis to the absolute immunity defense, and Count II is dismissed with prejudice.

## IV.    Conclusion

For the reasons set forth above, the Court grants in part and denies in part defendants' motion to dismiss. The Court dismisses with prejudice Count II against McGinnis. The Court dismisses without prejudice Count I against defendants McPartlin, Smith and Martin.

Plaintiff is granted leave to file an amended complaint, should he so choose, on or before April 30, 2007. Defendants are to answer or otherwise plead on or before May 30, 2007.

ENTER:

George M. Marovich
United States District Judge

DATED: April 12, 2007