UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTT OKUN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 06 C 5799 |
| v. | ) |
| | ) Judge George M. Marovich |
| | ) |
| ILLINOIS STATE TOLL HIGHWAY | ) |
| AUTHORITY, BRIAN McPARTLIN, | ) |
| TRACY M. SMITH, | ) |
| and ANTHONY M. MARTIN, SR., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Scott Okun ("Okun") filed a one-count amended complaint against defendants Illinois State Toll Highway Authority ("ISTHA"), Brian McPartlin ("McPartlin"), Tracy Smith ("Smith") and Anthony M. Martin, Sr. ("Martin"). Plaintiff alleges that defendants deprived Okun of a liberty interest without due process of law, and he seeks relief pursuant to 42 U.S.C. § 1983. Defendants Smith and Martin move to dismiss plaintiff's claim against them. For the reasons outlined below, the Court grants defendants' motion.

**I.    Background**

The Court has previously granted a motion by these plaintiffs to dismiss the same claim on the grounds that plaintiff failed to allege that they participated in the alleged constitutional deprivation. The following facts are taken from plaintiff's amended complaint.

Defendant Illinois State Toll Highway Authority ("ISTHA") is an agency of the State of Illinois. ISTHA is responsible for running the toll highways in Illinois. It employs defendants

McPartlin, the Chief of Administration; Smith, the Inspector General; and Martin, the Deputy Inspector General. Plaintiff Okun worked for ISTHA from March 2003 to about February 2006, when Okun was suspended without pay for several months and ultimately forced to resign.

On February 2, 2006, ISTHA suspended Okun without pay. Smith recommended the suspension, Martin concurred, and McPartlin informed Okun of the suspension. The reason for Okun's suspension was that he allegedly violated the state's procurement code in connection with a contract extension to a company called IGOR and a $50,000 sub-contract awarded to Carquiville Printing ("Carquiville"), where Okun's cousin worked.

ISTHA's first contract with Carquiville was awarded in 2003. When Okun first started working for ISTHA, he was the Program Manager for Marketing. Among other things, he was asked to obtain quotes for the printing of an I-PASS poster to be installed in toll booths. One of the three quotes Okun obtained was from Carquiville Printing, where his cousin worked. Okun informed the purchasing department and his supervisor that his cousin worked at Carquiville Printing. His supervisor and a person from the purchasing department approved the process, and Carquiville was awarded the job. It is unclear from the complaint who decided to choose Carquiville as the printer for the poster.

Soon thereafter, Okun was assigned to work on a program to make I-PASS available at Jewel stores. The ISTHA Board awarded IGOR a contract to package and distribute to Jewel stores certain I-PASS-related products and materials.

Years later, ISTHA was considering whether to extend IGOR's contract. At about the same time, ISTHA realized it needed to contact all I-PASS users regarding program changes. Someone (it is not clear from the complaint who) concluded that the cheapest way to reach the I-

PASS users would be to send them postcards. Because ISTHA was dealing with IGOR's contract at the same time, someone (again, the complaint leaves unclear who) decided that it might make sense to outsource the postcard printing through IGOR. Okun obtained a quote from Carquiville for the postcards, and that bid was least expensive by about $14,000. Ultimately, Karen Burke ("Burke"), the Chief of Operations, approved the decision to have IGOR and Carquiville work together on the postcards. It is unclear from the complaint who recommended that decision to Burke.

ISTHA suspended Okun without pay in February 2006 for his role in the Carquiville postcard subcontract. Before the suspension, Smith and Martin investigated the claims of wrongdoing against Okun. During the investigation, Smith and Martin interviewed Okun and received exculpatory information from Okun. Despite the exculpatory information, Smith recommended that Okun be suspended, and Martin concurred. After the suspension, Joelle McGinnis, an ISTHA spokesperson, spoke to the media about Okun's suspension. Specifically, McGinnis told reporters from the Chicago Tribune, among other media outlets, that Okun was suspended for "circumventing" procurement procedures. Okun alleges that the implication of McGinnis's statements was that he "engineered the illegal award of a printing contract to a company that employed his cousin."

A few months after his February 2006 suspension, Okun was forced to resign.

## II. Standard on a motion to dismiss

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual

allegations and draws all reasonable inferences in the plaintiffs' favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombley*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Twombley*, 127 S.Ct. at 1964-1965. A complaint must include enough factual allegations to "raise a right to relief above a speculative level." *Twombley*, 127 S.Ct. at 1965.

### III. Discussion

#### Okun's § 1983 claim

In Count I, Okun asserts a claim against defendants under 42 U.S.C. § 1983. He asserts that defendants violated the Fourteenth Amendment to the United States Constitution by depriving him of a liberty interest without due process of law. To prove a deprivation of a liberty interest, a plaintiff must show: "1) he was stigmatized by the defendants' conduct; 2) the stigmatizing information was publicly disclosed, and 3) he suffered tangible loss of other employment opportunities as a result of public disclosure." *Harris v. City of Auburn*, 27 F.3d 1284, 1286 (7th Cir. 1994). Charges that are sufficiently stigmatizing include immorality, dishonesty, alcoholism, disloyalty and subversive acts. *Mitchell v. Glover*, 996 F.2d 164, 167 (7th Cir. 1993). Other labels, such as incompetence or failure with respect to particular skills, are not sufficiently stigmatizing to implicate a liberty interest. *Mitchell*, 996 F.2d at 167.

Under § 1983, liability "does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (quoting *Sheik-Abdi v. McClellon*, 37 F.3d 1240, 1248 (7th Cir. 1994)). In order to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must include in his complaint allegations that the individual defendant is involved in the constitutional deprivation. *See Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987); *Brown v. Illinois Dep't of Public Aid*, 318 F. Supp.2d 696, 700 (N.D. Ill. 2004) (dismissing § 1983 claim where plaintiff's "allegations of unequal treatment are made generally against all defendants, failing to allege the 'element of personal involvement necessary to individual liability under § 1983.'") (internal citation omitted). In the case of an alleged deprivation of liberty without due process of law, a plaintiff must allege each defendant "actively participated in the dissemination of the information to the public." *Kudlinski v. Chicago Housing Auth.*, Case No. 02 C 0952, 2002 WL 1264007 at *3 (N.D. Ill. April 17, 2002) (dismissing claim because plaintiff failed to plead "additional facts indicating that defendants played any other role in the dissemination of this information."). It is not sufficient to allege that someone investigated wrong-doing or passed the information internally. *See Ratliff v. City of Milwaukee*, 795 F.2d 612, 627 (7th Cir. 1986) (explaining that there can be no actionable liberty deprivation where "there was no evidence at the trial that any of the defendants publicized the reason for [plaintiff's] discharge beyond the proper chain of command in the police department. . . . Absent proof that the [defendants] disseminated the stigmatizing information in a manner which would reach future potential employers of the plaintiff or the community at large, [plaintiff] cannot show that the defendant's actions impinged on her liberty interest in pursuing her occupation."); *Kudlinski*, 2002 WL

1264007 at * 3 ("Defendants' role in relaying this information to the State's Attorneys Office does not alone constitute such participation, since CHA has the right to investigate suspicions of criminal wrongdoing by its employees.").

In his amended complaint, Okun has alleged some additional actions by defendants Smith and Martin. None of these actions, however, suffice. Okun alleges that Smith and Martin investigated the claims of wrongdoing against Okun. Okun alleges that during the investigation, Smith and Martin interviewed Okun and received exculpatory information from Okun. Okun alleges that Smith and Martin ignored the information and suspended him without pay. What plaintiff fails to allege, however, is that either Smith or Martin disseminated the stigmatizing information. Accordingly, Count I is dismissed without prejudice with respect to Smith and Martin.

## IV. Conclusion

For the reasons set forth above, the Court grants defendants' motion to dismiss. The Court dismisses without prejudice Count I against defendants Smith and Martin.

The case is set for a status hearing on October 9, 2007 at 11:00 a.m.

ENTER:

*George M. Marovich*

George M. Marovich
United States District Judge

DATED: October 2, 2007